Willie N. REDDIX, Petitioner-Appellee,

v.

Morris THIGPEN, Commissioner, Mississippi Department of Corrections, et al., Respondents-Appellants.

No. 83–4068.

United States Court of Appeals, Fifth Circuit.

March 26, 1984.

Rehearings Denied May 21, 1984.

---

William S. Boyd, III, Marvin L. White, Jr., Sp. Asst. Attys. Gen., Jackson, Miss., for petitioners-appellants.

Steven L. Winter, New York City, Charles H. Ramberg, Jackson, Miss., for respondent-appellee.

Before CLARK, Chief Judge, GARZA and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The State of Mississippi appeals the district court's order granting habeas corpus relief to Willie N. Reddix, who was sentenced to die by a jury sitting in Harrison County, Mississippi. The district court held that the state had not proved either that Reddix had the criminal intent necessary for the state to find him guilty of murder, or that Reddix had the personal intent to kill necessary for the state to impose the death penalty. We affirm the district court's holding regarding the death sentence imposed against Reddix, and reverse its holding that the state had not proved criminal intent to commit the substantive offense.

I.

On the morning of December 2, 1974, Willie Reddix and Larry Jones had Willie's brother, J.D. Reddix, drive them to down-

town Biloxi, Mississippi. J.D. parked the car and the other two proceeded down the block to Art's Levi Store. Pursuant to their plan, inside the store Willie Reddix attracted the attention of the proprietor, Arthur Weinburger, while Jones slipped up behind him and, as Reddix watched, brutally hit him over the head three or four times with a Stilson wrench, crushing his skull. Reddix and Jones robbed the cash register of its contents of about a hundred dollars plus some silver dollars, and stole several articles of clothing. They dragged the dying Weinburger into a small office away from the merchandise area of the store, placed the clothing in a foot locker, and with it fled the scene. A customer discovered Weinburger a few minutes later and summoned the police. An ambulance took Weinburger to a hospital, where he died about five hours later without regaining consciousness.

In February of 1975 a grand jury in Harrison County, Mississippi, indicted Jones and the two Reddix brothers for the murder of Arthur Weinburger during the commission of the crime of robbery. The three were tried individually,[1] and on March 14, 1975, a jury convicted Willie Reddix of felony murder. The court imposed the mandatory death sentence in effect at that time. The Supreme Court of Mississippi, however, reversed and remanded the case pursuant to its decision in *Jackson v. State,* 337 So.2d 1242 (Miss.1976). *See Reddix v. State,* 342 So.2d 1306 (Miss.1977).

On remand, a jury again convicted Reddix of murder and again sentenced him to death. The Mississippi Supreme Court affirmed the conviction and sentence. *Reddix v. State,* 381 So.2d 999 (Miss.1980). The United States Supreme Court denied Reddix's Petition for Writ of Certiorari, *Reddix v. Mississippi,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980), and the Mississippi Su-

preme Court subsequently denied his Petition for Writ of Error Coram Nobis.

In March of 1981 Reddix filed a Petition for a Writ of Habeas Corpus in a United States district court pursuant to 28 U.S.C. § 2254. He presented several grounds for relief. The court granted Reddix leave to take discovery and granted an evidentiary hearing. The hearing, however, did not take place. Reddix filed a motion for partial summary judgment on the grounds that the jury had not found he had the requisite criminal intent to commit the offense of murder or the personal intent that would justify imposing the death penalty against him. The state filed a counter motion for summary judgment on the intent question as well as Reddix's other claims.

In a lengthy opinion addressing all of Reddix's arguments, the district court denied Reddix's petition on November 10, 1982. On December 7, Reddix filed a Motion for Reconsideration of Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 60(b). The motion specifically raised the issues of the aborted evidentiary hearing, the state's failure to respond to discovery requests, and the propriety of disposing of Reddix's claims on a summary judgment motion. It also requested "such other and further relief as may be deemed proper." In this motion for reconsideration, Reddix specifically raised the issue of intent under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

The district court responded to Reddix's Motion for Reconsideration by vacating its previous order in toto. *Reddix v. Thigpen,* 554 F.Supp. 1212 (S.D.Miss.1983). It granted Reddix habeas relief pursuant to *Enmund,* and also on the grounds that the record did not contain sufficient evidence to show that Reddix had the requisite criminal intent to commit the substantive offense of murder. The district court ordered Reddix

---

1. A trial court convicted Jones, and the Mississippi Supreme Court upheld the conviction, noting that "[t]he proof ... is largely undisputed." Larry Jones wielded the wrench that killed Arthur Weinburger. See *Reddix v. State,* 381 So.2d at 1001–1002 (Miss.1980). A federal dis-

trict court, however, granted habeas relief to Jones because the jury did not find that Jones "killed, attempted to kill, or intended to kill ...." *Jones v. Thigpen,* 555 F.Supp. 870, 878 (S.D.Miss.1983). The state has appealed to this court. *Jones v. Thigpen,* Docket No. 83–4085.

to be set free because "he has been sufficiently punished for the crime of robbery which he committed on December 2, 1974."

Because of the faulty jury instruction given in this case, we are constrained to agree with the district court that Reddix's petition should be granted, pursuant to *Enmund,* as to the imposition of the death penalty. We disagree, however, with the district court's finding that the record does not contain evidence sufficient to convict Reddix of the substantive offense of murder, and with its decision to free Reddix from confinement.

## II.

### A.

In *Enmund v. Florida,* the Supreme Court held that the eighth amendment does not permit imposing the death penalty against "one who neither took life, attempted to take life, nor intended to take life." 102 S.Ct. at 3371. A Florida court had sentenced Enmund to die for a murder committed during the course of a robbery for which he drove the getaway car. While acknowledging that the evidence was sufficient to make Enmund a principal for purposes of finding him guilty of the substantive capital felony offense, the Court held that imposition of the death penalty against him was excessive and contrary to the eighth and fourteenth amendments. *Id.* 102 S.Ct. at 3372. *Enmund* recognizes that the death penalty is unique in its severity and irrevocability; consequently, before the state may impose it, the state must focus on the personal intent and culpability of the defendant himself, and not merely that of an accomplice. *Id.* 102 S.Ct. at 3377. *See also Bell v. Watkins,* 692 F.2d 999, 1005 n. 9 (5th Cir.1982) (discussing Mississippi Code

§ 97–3–19, the section under which Reddix was convicted).

The eighth amendment, then, allows the state to impose the death penalty only if it first proves that the defendant either participated directly in the killing or personally had an intent to commit murder. In the present case we cannot ascertain from the record whether the jury found that Reddix had a personal criminal intent to kill that allows him to be sentenced to die. This "level of uncertainty and unreliability [in] the fact-finding process ... cannot be tolerated in a capital case." *Beck v. Alabama,* 447 U.S. 625, 643, 100 S.Ct. 2382, 2392, 65 L.Ed.2d 392 (1980); *Clark v. Louisiana State Penitentiary,* 694 F.2d 75, 78 (5th Cir.1982). Consequently, we hold that the eighth amendment as interpreted by *Enmund* entitles Reddix to habeas corpus relief and requires the state to resentence him consistent with constitutional standards.

The Mississippi statute under which Reddix was convicted defines capital murder as a killing done "with or without any design to effect death," by anyone engaged in the commission of certain crimes, one of which is robbery.[2] Pursuant to its capital murder statute, then, the state could convict someone engaged in the crime of robbery of the substantive offense of capital murder without finding he had a personal intent to kill. This conclusion flows from the clear import of the words "with or without design." The capital murder statute, however, does not *require* imposition of capital punishment,[3] and the eighth amendment, as interpreted by *Enmund,* is not implicated as long as the sentence imposed is not capital punishment. As this court recognized in *Skillern v. Estelle,* 720 F.2d 839 (5th Cir.1983),

---

**2.** The Mississippi statute under which the jury convicted Reddix provides that:

(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:

.    .    .    .    .

(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary,

kidnapping, arson, robbery, ... or in any attempt to commit such felonies ....
Miss.Code Ann. § 97–3–19 (Supp.1983) (also in effect in 1974).

**3.** Mississippi law provides for a separate sentencing proceeding in which the jury hears evidence on aggravating and mitigating circumstances to determine whether the death sentence is appropriate. *See* Miss.Code Ann. §§ 99–19–101—105 (Supp.1983).

*Enmund* does not affect the state's definition of any substantive offense, even a capital offense. The state may omit specific intent as an element of a capital crime without transgressing the eighth amendment, and, consequently, may convict an accused of that capital offense without requiring the jury to find personal intent to kill. *Enmund,* however, will "bar a *death penalty* upon jury instructions that permitted its imposition based solely upon a coconspirator's intent and act, and absent personal intent or contemplation of the accused that a killing take place." *Id.* at 847 (emphasis in original). Thus, Reddix's conviction of the substantive offense of murder is not infirm under the United States Constitution and can serve as no basis for habeas relief.

### B.

At the close of the presentation of evidence in the guilt phase of Reddix's trial, the state trial court instructed the jury regarding the law in Mississippi of accomplice responsibility, which allows any participant in the crime during which the killing occurs to be liable as a principal. *Bell v. Watkins,* 692 F.2d 999, 1004 (5th Cir.1982); *Alexander v. State,* 250 So.2d 629 (Miss. 1971). Specifically, the court said:

> The Court instructs the Jury that the killing of a human being without the authority of law by any means or in any manner shall be Capital Murder *when done with any design to effect death by any person engaged in the commission of the crime of robbery.* The Court therefore instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt, that the Defendant, Willie N. Reddix, in company with another person . . . did then and there rob the said Arthur Weinburger of said personal property, and while so engaged in this design, the said Willie N. Reddix, *acting in concert with another, struck the said Arthur Weinburger and killed him with an instrument,* to-wit: a wrench, with the formed purpose to effect his death and as a result of said blows to the head, the said Arthur Weinburger died, and said

murder was without justification or in necessary self-defense, the Jury shall find the Defendant guilty of Capital Murder. (Emphasis added.)

And further:

> If you find from the evidence in this case beyond a reasonable doubt that the Defendant, Willie N. Reddix, was engaged in the criminal act of Robbery and that during the commission of the said Robbery the Defendant *acting in concert with another* did unlawfully, wilfully, feloniously and of *their* malice aforethought kill and murder Arthur Weinburger, a living person, and that said killing was done not in necessary self-defense or otherwise justifiable, then you should find the accused guilty of Capital Murder. (Emphasis added.)

A reasonable juror carefully heeding these instructions fairly could conclude that Jones's intent to commit murder may be imputed to Reddix. That imputation is exactly what *Enmund* and the eighth amendment prohibit in death penalty cases. Consequently, the death sentence is infirm under the United States Constitution and cannot stand.

Our holding in this case is consistent with prior decisions of this court. In *Bell v. Watkins,* 692 F.2d 999 (5th Cir.1982), we held that the jury instructions at the sentencing phase were unconstitutionally vague because they did not define or specify the aggravating or mitigating circumstances of the crime that the jury must consider in deciding whether to impose the death penalty. *Id.* at 1010–1011. Because we granted the petition on the grounds of vagueness, we did not reach the *Enmund* question, but noted, however, that *Enmund* might be implicated upon resentencing because the judge's instructions on capital murder and aiding and abetting left unclear whether the jury convicted the defendant because they concluded that he had in fact pulled the trigger or solely because he was involved in the robbery. *Id.* at 1013.

■ Similarly, in *Clark v. Louisiana State Penitentiary,* 694 F.2d 75 (5th Cir.

1982), this court granted habeas relief to a petitioner because jury instructions substantially similar to those given at the guilt phase of Reddix's trial impermissibly shifted the burden of proof to the defendant in violation of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Clark and his partner robbed a restaurant and, in the process, one or both of them shot the restaurant manager twice and stabbed him thirty times. The substantive law under which Clark was convicted, unlike Mississippi law, required the state to prove specific intent. *Id.* at 76–77. While acknowledging that the evidence was sufficient to prove that Clark committed robbery, and perhaps murder as well, this court held the jury instructions to be fatally defective because they did not instruct the jury to find "that a conspiracy to kill existed" or that absent that conspiracy "they could not attribute the murderous act of one conspirator to the other." *Id.* at 76. Citing *Enmund,* the court noted that the instructions were contrary to the eighth amendment, but held they were unconstitutional under *Sandstrom* as well, so as to require granting habeas relief as to the substantive conviction.[4] *Id.* at 76–77.

■ Conversely, we have refused to grant habeas relief when the petitioner argued that the jury had not found personal intent to kill if curative jury instructions given at the sentencing phase, or the manner in which the case was presented to the jury, clearly indicated that the jury necessarily concluded that the defendant had a personal intent to kill. In *Skillern v. Estelle,* 720 F.2d 839 (5th Cir.1983), we held that instructions given at the sentencing hearing and the jury's response to special issues submitted to it left no doubt that the jury found Skillern had a personal intent to kill. *Id.* at 847–48. Similarly, in *Jordan v. Watkins,* 681 F.2d 1067 (5th Cir.1982), a case involving only one perpetrator, the jury instructions made clear that felonious intent was a prerequisite to imposition of the death penalty. Because the crime had only one perpetrator, the intent found could not be anyone's but the defendant's. In Reddix's case, however, involving three perpetrators, nothing that transpired at trial and nothing in the instructions given at his sentencing hearing clarifies the confusion left by the jury instructions given at the guilt phase of the trial.[5]

In reversing Reddix's death sentence, we do not hold that the evidence adduced at trial is insufficient for a reasonable jury to conclude that Reddix had a personal criminal intent justifying the imposition of the death penalty. We hold only that because of the jury instructions, we cannot ascertain what the jury actually concluded from the evidence. Consequently, the state is free to hold another hearing to resen-

---

**4.** As we said in denying rehearing:

When ... the state law defines the crime to include a state of mind actively desiring that death or great bodily harm occur to another, the trial court may not lighten the state's burden, or dispense with that essential element of the crime, by converting the crime into felony murder.

697 F.2d 699 at 700.

**5.** The instructions the court gave at the sentencing phase instructed the jury only on the law of aggravating and mitigating circumstances. Indeed, it is likely that they reinforced any confusion that the previous instructions may have created. In defining "aggravating circumstances," the court gave the following instruction:

Was the offense committed while the Defendant was engaged in the commission of the crime of robbery, or in an attempt to commit robbery? Robbery is defined as the felonious taking of the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person. If a person shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, then he would be guilty of an attempt to commit the offense.

And further:

If you find from the evidence, beyond a reasonable doubt, that a capital offense was committed while the Defendant was engaged, or an accomplice, in an attempt to commit the crime of robbery ... your verdict shall be written on a separate piece of paper ....

tence Reddix. If the jury concludes that Reddix personally had the intent to kill Arthur Weinburger, it may reimpose the death penalty. *Jordan v. Watkins,* 681 F.2d at 1083 (5th Cir.1982).

## III.

■ The district court held that the record did not contain enough evidence on the issue of intent to convict Reddix of the substantive offense of murder. We do not agree. The state produced several witnesses who, if believed, established that Reddix entered and then departed Art's Levi Store near the time the crime occurred. The state also produced the written confession of Reddix outlining the events occurring prior to, during, and after the robbery.[6] The confession specifically referred to a "plan" that he and Larry Jones contrived for their criminal venture. The confession establishes that Reddix was fully involved in the commission of the felony of robbery when the murder occurred. Reddix's confession also shows that he deliberately attracted Weinburger's attention so that Jones could sneak behind him and bludgeon

his skull with a wrench. Finally, it indicates that Reddix must have observed each blow of this murderous assault and said or did nothing to stop his accomplice in crime from the deadly assault. Certainly, under the law of accomplice liability and based on the evidence in this record, a reasonable jury could conclude that Reddix was guilty beyond a reasonable doubt of the substantive offense of murder during the commission of the crime of robbery. As explained previously, *Enmund* does not affect the substantive criminal law of accomplice liability. Consequently, we reverse the district court's order insofar as it relates to Reddix's guilt or innocence of the substantive offense. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

## IV.

The district court in its first order considered all of the arguments Reddix raised attacking the constitutionality of his conviction of the substantive offense. The court issued a detailed and lengthy opinion ad-

---

**6.** The confession, dictated by Reddix, writing, said:

I, Willie Reddix, was at my home on the 2nd of December, 1974, and Larry Jones was at my home. Larry is also known as Catfish. J.D. Reddix was not there at the time. He did not know anything about the plan that Larry and I had in mind. When J.D. came home, we asked him to give us a ride uptown. He took us uptown and parked in the lot behind the place that used to be Bradley's Cleaners. Larry Jones and I got out of the car, but my brother, J.D. Reddix, did not get out of the car. This was about 10:45 a.m. Larry and I walked uptown for about five or ten minutes. Then I, Willie Reddix, went into Art's Levi Store, and I began to question the man about a coat. He showed me a couple of coats, and he had his back turned to the door. About this time, Larry Jones came in the store. I kept talking to the man to keep him from seeing Larry. For about the next three seconds, Larry hit the man about three times with a Stilson wrench. Then I ran to the door to keep a watchout. I had no idea that the man was dead. Larry drug the man into the office. We gathered all the goodies. Larry took shirts and pants and hats and put them in a footlocker. I was at the door watching all the time. Larry said,

"I can't get the cash register open," so I opened it for him. At this time I went in the office to see was Mr. Art dead, but he was still breathing, so I put his coat under his head, and then we left the scene. Larry carried the footlocker out of the store. Larry went to the left, on Croesus Street, and I went east on Howard Avenue. I was carrying a black jacket in my hand which I had took from the store. We met back at the car. J.D. was still in the car. Larry put the footlocker in the back seat of the car and he sat in the back seat. I got in the front seat. I gave the jacket to J.D. and told him, "Here is a jacket." J.D. did not ask us where we had been or where we got the things from. The only thing he said was, "What you all got?" and I told him to just drive. We went home and parked the car in front of my house and Larry took the footlocker into my house. When I opened the cash register, we both took the money out. I got about fifty dollars, and I got one silver dollar. After we got home, we laid low for the rest of the day. All J.D. got was the coat I gave him. We did not tell him what we had done. The gun was not used in the holdup that Larry had, just the Stilson wrench.

(Punctuation added.)

dressing each of them, and denied the relief requested. In granting habeas relief upon Motion for Reconsideration, however, the district court vacated its prior order in toto. We therefore remand this case to the district court for reentry of its first order, either in its original form or with such modifications as are appropriate in light of this opinion. We vacate the district court's order granting Reddix's writ of habeas corpus and direct it to issue an order granting the writ of habeas corpus unless, within a reasonable time, the State of Mississippi conducts another sentencing hearing in the manner provided by Mississippi law and not inconsistent with this opinion. The state, of course, also has the option of vacating Reddix's death sentence and imposing a sentence less than death in accordance with state laws.[7]

Insofar as the district court's order freed Reddix because he already had served enough time for the crime of robbery, the order clearly was not within the power of the district court. Reddix has not been accused or convicted of robbery. The state has the right to hold Reddix pending the outcome of resentencing proceedings.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

[7]. *See Bell v. Watkins*, 692 F.2d at 1014 *and* Miss.Code Ann. § 99–19–107 (Supp.1983). As we have noted, the district court on remand will enter an order addressing all of the claims, such as admissibility of the confession, that Reddix raised in his petition. If either party appeals that order the state need not hold another sentencing hearing or otherwise resentence Reddix until this court renders a final decision in that appeal. All issues affecting the admissibility or nonadmissibility of evidence in either a resentencing hearing or any other proceeding which may become necessary in this case should be resolved before the state fulfills its obligations under the order issued on remand pursuant to this opinion. We make this provision allowing the state to postpone its obligation in the interest of judicial economy, and because of the peculiar procedural posture of this case.