Crawford **BULLOCK**, Jr.,
Petitioner-Appellant,

v.

Eddie **LUCAS**, Warden, and State of Mississippi, Respondents-Appellees.

No. 83–4702.

United States Court of Appeals,
Fifth Circuit.

Sept. 21, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 31, 1984.

---

Garwood, Circuit Judge, concurred and filed opinion.

Shearman & Sterling, Joseph T. McLaughlin, Henry Weisburg, New York City, for petitioner-appellant.

Bill Allain, Atty. Gen., William S. Boyd, III, Marvin L. White, Asst. Attys. Gen., Jackson, Miss., for respondents-appellees.

Before POLITZ, WILLIAMS and GAR-WOOD, Circuit Judges.*

POLITZ, Circuit Judge:

Informed by the teachings of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and guided by, *inter alia*, our recent decision in *Reddix v. Thigpen*, 728 F.2d 705 (5th Cir.), *reh'g denied*, 732 F.2d 494 (5th Cir.1984), we direct issuance of a writ of habeas corpus, to the end that Crawford Bullock, Jr. be sentenced to life imprisonment or accorded a sentencing hearing consistent herewith.

*Contextual Background*

Crawford Bullock, Jr., was found guilty of the offense of capital murder, in a felony-murder setting, by a Mississippi state court jury and sentenced to death by lethal gas. His conviction and sentence were affirmed by the Supreme Court of Mississippi, *Bullock v. State*, 391 So.2d 601 (Miss. 1980), *cert. denied*, 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981). The Mississippi high court subsequently rejected Bullock's application for leave to file a petition for writ of error *coram nobis.*

With state remedies exhausted, Bullock sought Great Writ relief, 28 U.S.C. § 2254, alleging that his death sentence was prohibited by the eighth and fourteenth amendments, as explicated in *Enmund*, because he neither killed, attempted to kill, intended the death of the robbery victim, nor contemplated the use of lethal force. After a trial by consent before a magistrate, 28 U.S.C. § 636(c), Bullock's petition was denied. Judgment was entered by the district court. Bullock appeals, urging the foregoing constitutional argument. He further urged a due process deprivation based on the assertion that the Mississippi Supreme Court failed to make an appropriate proportionality review. In light of the intervening decision in *Pulley v. Harris*, — U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), that assignment of error is abandoned. We address only the *Enmund*-based contention.

*Facts*

The events leading to the brutal homicide which is at the core of this case began in the evening hours of September 21, 1978, when Bullock, with one leg encased in a cast, and Ricky Tucker repaired to the Town Creek Saloon in Jackson, Mississippi for a night of drinking. Sometime after

* GARWOOD, Circuit Judge, concurring.

midnight they left the tavern accepting a ride from Mark Dickson because their driver had left earlier. On the way to Tucker's house Bullock asked Dickson to stop at a convenience store so he could buy a loaf of bread. Dickson gave Bullock money for the purchase. The store had no bread, Bullock returned Dickson's money and the drive resumed.

As the three men continued the journey towards Tucker's place, they drank heavily from a bottle of whiskey. At some point Bullock asked Dickson to stop the car so he could answer a call of nature. Upon returning to the vehicle, Bullock heard Tucker and Dickson arguing and heard Tucker say, "Don't make me pull this gun." Apparently Dickson was indebted to Tucker for illicit drugs and after insisting he had no money offered Tucker his auto in payment. Bullock reentered the vehicle and both the argument and the trip resumed with Dickson driving. Dickson finally stopped the car near a construction site and he and Tucker exchanged blows. At Tucker's importuning, Bullock grabbed Dickson but Dickson broke away and ran from the car with Tucker in pursuit wielding the whiskey bottle. Bullock, slowed down by his cast, trailed behind. Tucker tackled Dickson and when Bullock reached them the two were fighting. Bullock grabbed for Dickson and was holding him by the head when Tucker struck Dickson on the head with the whiskey bottle. The blow broke the bones in Bullock's hand and cut it. Tucker struck Dickson with his fists until Dickson fell to the ground, then kicked him in the head. Tucker continued the assault by smashing Dickson in the head with a concrete block over and over until Dickson died.

Tucker suggested that they burn Dickson's body and car; Bullock countered by suggesting that they dispose of Dickson's body in a nearby lake. The latter course was followed and Dickson's body was loaded in the car. Tucker took Dickson's wallet but threw it away when he saw it contained no money. Tucker and Bullock then drove to a carwash and cleaned the blood from the car's exterior. Thereafter, they drove to Bullock's house, secured a garden hose and then motored to a lake near Byram, Mississippi. At the lake, they removed Dickson's outer clothing, placed concrete blocks inside his underclothes, wrapped the hose around his body and submerged the body in the lake. Tucker pulled the body into the lake, Bullock followed and helped press it into the lake's bottom.

Tucker and Bullock were apprehended and indicted for the capital offense of robbery-murder in violation of Miss.Code Ann. § 97–3–19(2)(e), based on the death of Dickson in connection with the felonious taking of Dickson's auto and wallet. The two miscreants were tried separately. Tucker was convicted and sentenced to life imprisonment. Bullock, as noted, was convicted and sentenced to death.

### Analysis

█ In *Enmund,* the Supreme Court held that the eighth amendment forbids "imposition of the death penalty on one ... who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 797, 102 S.Ct. at 3376–77. The Court further emphasized that "[t]he focus must be on [the particular defendant's] culpability, not on that of those who committed the robbery and shot the victims, for we insist on 'individualized consideration as a constitutional requirement in imposing the death sentence,'" (citations omitted). 458 U.S. at 798, 102 S.Ct. at 3377. *See Smith v. Oklahoma,* —— U.S. ——, 104 S.Ct. 324, 78 L.Ed.2d 297 (1983) (vacating a death sentence and remanding for further consideration in light of *Enmund*); *Skillern v. Estelle,* 720 F.2d 839 (5th Cir.1983). In *Reddix* we sought to capsulate these directives by observing, "*Enmund* recognizes that the death penalty is unique in its severity and its irrevocability; consequently, before the state may impose it, the state must focus on the personal intent and culpability of the defendant himself, and not merely that of an accomplice." 728 F.2d at

708. Accordingly, while the trier of fact may impute intent to an aider and abettor for the purpose of determining guilt, that imputation may not be done for the purpose of imposing the death penalty. *Reddix; Skillern.*

■ Bullock contends that his death sentence is constitutionally infirm under *Enmund* because the instructions to the jury permitted the death sentence without a specific finding that Bullock either killed, attempted to kill, or intended a killing or the use of lethal force. Such was the argument proffered in *Reddix.* We were persuaded in *Reddix;* we are likewise now so persuaded.

Bullock was convicted under Mississippi's capital murder statute which provides in pertinent part:

The killing of a human being without the authority of law by any means or in any manner shall be capital murder ...

When done with or without any design to effect death, by any person engaged in the commission of the crime of ... robbery ... or in any attempt to commit such....

Miss.Code Ann. § 97-3-19(2)(e). The statute, in permitting a verdict of guilty absent a finding of a design to effect death, allows the imputation of intent from one defendant to another. As noted, neither *Enmund* nor any decision of this court purports to interfere with a state's pronouncements substantively defining criminal offenses. Guilt of the offense may be based on imputed intent; capital punishment may not be. In light of *Enmund* and its progeny, care must be taken to assure that the trier of fact does not confuse the applicable standard for the determination of guilt and the standard constitutionally mandated for the determination of punishment.

Mississippi bifurcates capital offense trials. Miss.Code Ann. § 99-19-101. At the conclusion of the guilt phase the trial judge charged the jury (emphasis ours):

The Court instructs the Jury that if you believe from the evidence in this case, beyond a reasonable doubt that on September 21, 1978, in the First Judicial District of Hinds County, Mississippi, Crawford Bullock, Jr., was present, consented to, and encouraged the commission of a crime and thereby aided another individual, and that he, the said Crawford Bullock, Jr. or the other then and there did willfully, unlawfully and feloniously take and carry away the personal property of another from the presence of Mark Dickson, and from his person, against his will, by violence to his person, to-wit his billfold or one 1978 Thunderbird automobile then in his possession, then and in that event, the Defendant, Crawford Bullock, Jr. is guilty of robbery as if he had with his own hands committed the whole offense; and, if the Jury further finds from the evidence in this case, beyond a reasonable doubt, that on said date aforesaid, while engaged in the commission of the aforesaid robbery, if any, that the said Crawford Bullock, Jr., did alone, or while acting in concert with another, while present at said time and place by consenting to the killing of the said Mark Dickson, and that the said Crawford Bullock, Jr., did any overt act which was immediately connected with or leading to its commission, without authority of law, and not in necessary self defense, by any means, in any manner, *whether done with or without any design to effect the death of the said Mark Dickson*, that then, and in that event, the said Crawford Bullock, Jr., is guilty of capital murder, and the form of your verdict should be in the following form, written on a separate sheet of paper: "We, the Jury, find the Defendant, Crawford Bullock, Jr., guilty of Capital Murder."

After the jury found Bullock guilty, the trial continued with the sentencing phase at which the prosecutor and the defense presented evidence of aggravating and mitigating factors. At the conclusion of that hearing, the jury was instructed to weigh the evidence, balance the relevant aggravating and mitigating factors, and impose a sentence of either death or life imprisonment. Miss.Code Ann. § 99-19-101. Be-

cause the then existing Mississippi death penalty statute did not so require,[1] the court gave the jury no further instruction at the sentencing phase requiring the jury to focus on Bullock's personal intent and culpability as mandated by *Enmund.*

We find Bullock's sentence of death constitutionally infirm. We perceive no error of constitutional or lesser proportions in his conviction; that remains undisturbed. But the penalty of death may not stand in light of the jury instruction which would permit of the imposition of the death penalty merely because Bullock participated in the robbery "with or without any design to effect the death of the said Mark Dickson." We accordingly direct issuance of a writ of habeas corpus vacating the death sentence of Crawford Bullock, Jr., but permitting the State of Mississippi, at its option, to either impose a sentence of life imprisonment or, within a reasonable period of time, conduct a new sentencing hearing consistent herewith.

REVERSED and RENDERED and returned to the district court with instructions.

GARWOOD, Circuit Judge, concurring:

I concur in Judge Politz's persuasive opinion. These remarks are appended only to reflect my understanding that we do not hold that the death penalty may not be imposed upon " '... a participant in the commission of the felony who lacked the requisite intent to murder but did take part in the actual killing ...'." *Reddix v. Thigpen,* 732 F.2d 494, 495 (5th Cir.1984) (quoting from *Drake v. Francis,* 727 F.2d 990, 997 (11th Cir.1984)). Here, however, it appears that the entire case was essentially tried on the theory, in full accordance with the then law of Mississippi, that it was not necessary, either for the felony murder conviction or for the sentence to death, to find that Bullock had either the intent to

kill or any personal participation in the killing. It is not unreasonable to infer that Bullock's jury may have reached the result it did despite concluding both that Bullock had no design to effect death and that the affray reached the level of being potentially fatal to Dickson only well after Bullock had backed away and ceased any personal participation in it. Had the case not been tried on the theory of the then Mississippi law or had Dickson died from the whiskey bottle blow to his head, we would have to assess the adequacy of the instructions in a materially different context.

---

1. Following *Enmund,* in 1983 Mississippi amended its death penalty statute. Miss.Code Ann. § 99–19–101(7) now provides:

In order to return and impose a sentence of death the jury must make a written finding of one or more of the following:

(a) The defendant actually killed;
(b) The defendant attempted to kill;
(c) The defendant intended that a killing take place;
(d) The defendant contemplated that lethal force would be employed.