No. 84–6558. STEWART *v.* TEXAS. Ct. Crim. App. Tex. Certiorari denied. 

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Petitioner in this case seeks no revolutionary expansion of the principles underlying this Court's current death penalty jurisprudence. All he asks is the benefit of existing law as proclaimed by a majority of this Court. This Court has declared that a sentence of death may not be imposed on one "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Enmund* v. *Florida*, 458 U. S. 782, 797 (1982). Yet the Court's refusal to consider petitioner's case countenances just that result. Even if I believed, therefore, that the death penalty could constitutionally be imposed under certain circumstances,[1] I would grant certiorari in this case and vacate the death sentence imposed here.

---

[1] I continue to adhere to my view that the death penalty is, in all circumstances, cruel and unusual punishment prohibited by the Eighth and

## I

At his murder trial, petitioner Darryl Elroy Stewart and his accomplice Kelvin Kelly provided conflicting theories about the crime. According to Stewart's statement, which the State introduced at trial, he and Kelly were walking past the deceased's apartment when Kelly saw through the open door a stereo that he wanted to steal. Kelly told Stewart that he was going to run in and grab the stereo, and instructed Stewart to stand guard at the door. Stewart heard a woman scream; heard Kelly attempt to force sexual relations on her; saw glimpses of a struggle; and heard two shots. Thus, Stewart's statement indicated that he agreed to assist in Kelly's theft of the stereo; that Kelly strayed from the plan to steal the stereo and attempted to commit a sexual offense against the occupant of the apartment; and that during the course of this offense Kelly killed the victim. If Stewart's account of the crime is accepted, he did not himself kill, did not attempt to kill, and did not intend that a killing would take place. According to Kelly, however, it was Stewart who entered the apartment to commit burglary, Stewart who had the gun, Stewart who attempted a sexual assault on the victim, and Stewart who killed her, while Kelly waited at the door; the State introduced some evidence corroborating this story. Kelly was promised, in exchange for his testimony, that he would receive no more than 50 years in prison.

## II

The jury was asked to resolve this conflicting evidence and determine the guilt or innocence of Stewart on the murder charge. In order to guide the jury in that endeavor, the trial judge gave a lengthy instruction on the Texas "law of parties," set out in full in the margin.[2] 686 S. W. 2d 118, 123 (Tex. Crim. App. 1984).

---

Fourteenth Amendments. See *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting); *Furman* v. *Georgia*, 408 U. S. 238, 314 (1972) (MARSHALL, J., concurring).

[2] The judge charged the jury as follows:

"'Now, if you find from the evidence beyond a reasonable doubt that . . . the Defendant, Darryl Elroy Stewart, did while in the course of committing or attempting to commit burglary of a habitation, . . . intentionally caused *[sic]* the death of [the victim] by shooting her with a gun, then you will find the Defendant guilty of Capital Murder, as charged in the Indictment. Or if you

The instructions provided the jury with two theories of capital murder. First, the jury could find Stewart guilty of having intentionally shot the victim himself. Alternatively, the jury could find the following series of facts: that Stewart conspired to commit burglary; that the murder was committed by Kelly in the course of the burglary; that Stewart was *intentionally* aiding Kelly in the execution of the *burglary* at the time that Kelly committed the murder; and that the murder was an offense that "should have been anticipated" as a result of the conspiracy. Either of the two findings would support a verdict of guilty of capital murder.

The jury returned a verdict of guilty. Defense counsel requested that the jury be instructed to specify upon which of the two murder offenses it had convicted Stewart, but the trial judge denied the request. The trial proceeded to the sentencing phase, and petitioner was sentenced to die. .

### III

Under the Texas capital murder statute, a murder does not constitute capital murder merely because it was committed in the course of a burglary or other specified felony. The statute explicitly provides that the murder must have been committed "intentionally" in the course of the other felony. Tex. Penal Code Ann. § 19.03(a)(2) (Supp. 1985). In theory, therefore, a person cannot be required to face the death penalty without having acted with an

---

find from the evidence beyond a reasonable doubt that . . . Kelvin Kelly and Darryl Elroy Stewart entered into a conspiracy to burglarize the habitation . . . , and that pursuant thereto they did carry out or attempt to carry out such conspiracy to commit burglary, and while in the course of committing such burglary, if any, Kelvin Kelly did intentionally cause the death of [the victim] by shooting her with a gun and that the Defendant, Darryl Elroy Stewart, pursuant to said conspiracy, if any, with the intent to promote, assist, or aid Kelvin Kelly in the commission or attempted commission of the said burglary, then and there, at the time of the shooting, if any, was acting with and aiding Kelvin Kelly in the execution or attempted execution of said burglary, and that the shooting of [the victim] followed in the execution of the conspiracy and in furtherance of the unlawful purpose of Kelvin Kelly and Darryl Elroy Stewart to commit the burglary, and that the shooting of [the victim] was an offense that should have been anticipated as a result of the carrying out of the conspiracy, then you will find the Defendant, Darryl Elroy Stewart, guilty of Capital Murder as charged in the indictment.'" 686 S. W. 2d, at 123–124.

intent to kill. Ironically, it was this reading of the statute that led this Court, in *Enmund,* to number Texas among the States that did not permit a capital sentence to be imposed upon a person convicted only of felony murder. 458 U. S., at 790, n. 7.

The *Enmund* Court's assessment, however, did not take into account the Texas "law of parties." Under that law, a person can be punished for an offense committed by another if he is "criminally responsible" for the other person. Tex. Penal Code Ann. § 7.01(a) (1974). The "criminal responsibility" of person *A* arises if *A* conspires to commit one felony and, in furtherance of that unlawful purpose, a co-conspirator in the first felony commits a second offense that "should have been anticipated" as a result of the conspiracy. The statute explicitly provides that *A* is guilty of the second offense even "though having no intent to commit it." Tex. Penal Code Ann. § 7.02(b) (1974); see *Ruiz* v. *State,* 579 S. W. 2d 206, 209 (1979) ("[S]ection 7.02(b) . . . eliminates any necessity on the part of the State to prove the appellant had any intent to kill"). If the first offense is burglary, and the co-conspirator's second offense happens to be murder, then *A* may be deemed to have committed capital murder—even though the capital murder statute requires that the murder be committed intentionally in the course of a felony. The vulnerability of *A* to a capital charge under these circumstances, therefore, is entirely dependent on the acts of his co-conspirator; *A*'s own criminal accountability is not entirely within his control. In this application of the Texas statutes, every intent element that would normally guard against a capital charge for one who did not kill or intend to kill can be neatly circumvented and substituted with the fiction of vicarious intent. This is no mere theoretical quirk in state law; it is precisely the train of logic that quite possibly led to the death sentence in this case.

The entire conduct of petitioner's trial operated to buttress the prejudice created by the State's reliance on this illusory edifice of intent. For example, every juror who ended up on petitioner's panel had stated in *voir dire* that he or she could find a non-triggerman guilty of capital murder and could impose the death sentence, even if the defendant had no specific intent to kill or to cause a killing.[3] Moreover, when the defense attorney attempted

---

[3] Petitioner was sentenced before this Court issued its decision in *Enmund.* Petitioner has not made it clear whether defense counsel moved to

to explain to the jury that the law of parties—that is, vicarious intent—is not applicable to sentencing decisions, the trial court sustained the prosecutor's objection on the ground that counsel had misstated the law. Further, the judge did not instruct the jury that at the sentencing stage it was obliged to consider mitigating circumstances, such as the possibility that Stewart played a relatively minor role in the murder.[4] At every step of the way, one or more of these factors contributed to the likelihood that the jury failed to understand that it could not rely on vicarious intent to determine whether a defendant deserves to die.

Respondent contends that any deficiency in the jury's consideration of intent was cured at the sentencing phase. The judge's charge to the jury made it clear that imposition of the death sentence would be contingent upon a jury finding that "the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result." See Tex. Code Crim. Proc. Ann., Art. 37.071(b)(1) (Vernon 1981). But the deliberateness of a burglary simply cannot be equated with an intent to kill. Moreover, it seems that the judge informed the jury, over defense objection, that the conduct which must be found to be deliberate as a prerequisite to the death sentence includes the conduct of the triggerman, as attributed to the defendant through the law of parties. Thus, the "individualized consideration" of the

---

strike the panel on the basis of its expressed willingness to impose death in the absence of intent. Even if he did not, however, the *Enmund* claim was preserved by counsel's request for a specification of the offense on which petitioner was convicted, his unsuccessful attempt to state to the jury that the law of parties does not apply at sentencing, and other related objections made at trial.

[4] Petitioner argues that this failure of the trial court to instruct the jury that it must consider mitigating circumstances violates *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982), in which the Court held that a State may not preclude the sentencer from considering mitigating circumstances. *Id.*, at 113–114. Whether *Eddings* requires such instructions in all cases has not been explicitly decided. In this case, however, the lack of instruction concerning the jury's obligation to consider mitigating factors is particularly troubling, because the determination that the jury was expected to make at sentencing was strikingly similar to the findings it had already made at the guilt phase. Without guidance from the judge, it is quite possible that the jury believed the death sentence to be an automatic result of the conviction.

defendant's own culpability, required by *Lockett* v. *Ohio*, 438 U. S. 586, 605 (1978), was entirely neglected. Nor can the constitutional demand for culpable intent be satisfied by the jury's finding that there was a reasonable expectation that death would result from the burglary. Such a finding does not even purport to be a measure of "personal responsibility and moral guilt," without which a defendant cannot be held accountable with his life. *Enmund* v. *Florida*, 458 U. S., at 801.

## IV

This case differs from *Enmund* in only one pertinent respect. In *Enmund*, the only evidence implicating the defendant was an inference that he was waiting near the scene of the crime in order to help the principal perpetrators escape. *Id.*, at 788. No conflicting evidence tended to show that Enmund may have been the actual killer. Here, in contrast, there was some evidence tending to establish Stewart as the triggerman. Nevertheless, we cannot be certain whether the jury imposed a sentence of death in the absence of an essential factual premise or not. For purposes of determining whether the Constitution has been violated, therefore, we simply cannot discount the grave possibility that Stewart was sentenced to death without the mental state that *Enmund* recognized as prerequisite to any such sentence.[5] See *Sandstrom* v. *Montana*, 442 U. S. 510, 517 (1979). The courts should not permit unconstitutional death sentences to escape meaningful

---

[5] This Term, the Court will consider whether *Enmund* requires that the jury make a finding of intent, or whether an appellate court may make the requisite finding upon review of the evidence. See *Bullock* v. *Lucas*, 743 F. 2d 244 (CA5 1984), cert. granted *sub nom. Cabana* v. *Bullock*, 471 U. S. 1052 (1985). If this Court determines in *Bullock* that a jury finding of intent is required, petitioner's sentence will have to be vacated. Moreover, even if this Court resolves *Bullock* by concluding that an appellate finding of intent will suffice under *Enmund*, petitioner's sentence should still be vacated, because such a finding could not be made by an appellate court in this case. Petitioner's jury did not explicitly convict on one offense or the other, and the evidence supporting an intentional murder conviction conflicts with the evidence supporting a conviction for felony murder. Thus, it would be impossible for an appellate court to divine which of the mutually exclusive sets of testimony was accepted by the jury and should accordingly be examined for indications of intent. We should grant this petition irrespective of *Bullock*.

review merely because one can conceive of an alternative theory under which the execution can be imagined to fall within the terms of this Court's demands. The obligation of the courts is especially compelling here, because the State clearly had the option of eliminating any doubt on the issue by charging only the intentional murder offense and thus forestalling any *Enmund* problem. At least the State might have refrained from objecting to the defense counsel's attempts to inform the jury regarding the inapplicability of the law of parties at the sentencing phase. One cannot help but wonder why the State did not do anything to reduce the confusion, if it is indeed as confident as it claims to be that the jury's finding of guilt was based solely on intentional murder.

The likelihood that Stewart was convicted and sentenced to death on a theory of vicarious intent requires that *Enmund* be our guide in evaluating the legal claims put forward by petitioner. Like Enmund, Stewart has been sentenced to death "in the absence of proof" that he "killed or attempted to kill," or that he "intended or contemplated that life would be taken." 458 U. S., at 801. Some disputed evidence suggested that Stewart had such intent, but we have no proof thereof, and we cannot tell from the verdict whether the jury so found.

V

Although this Court upheld the Texas capital sentencing scheme against certain challenges in *Jurek* v. *Texas*, 428 U. S. 262 (1976), petitioner's case demonstrates that the statute must be measured against a different standard when the State seeks to execute one convicted of felony murder. In this context, the statute is wholly inadequate to meet the constitutional demands articulated in *Enmund*, because it does not ensure that the ultimate sentence will be reserved for those who have intended to kill. Quite simply, that is what *Enmund* demands, and what the Eighth and Fourteenth Amendments, at a minimum, require. I would grant the petition, vacate the sentence, and remand for further proceedings.