The STATE of Texas, Appellant,

v.

Larry Eugene McPHERSON, Appellee.

No. 07–91–0151–CR.

Court of Appeals of Texas,
Amarillo.

Jan. 3, 1992.

On Motions for Rehearing Feb. 12, 1992.

Discretionary Review Granted
May 20, 1992.

Randall L. Sherrod, Dist. Atty., John L. Davis, Asst. Dist. Atty., Canyon, for appellant.

Warren L. Clark, Amarillo, for appellee.

Before DODSON, BOYD and POFF, JJ.

BOYD, Justice.

On April 3, 1991, after his conviction of capital murder, appellee Larry Eugene McPherson was sentenced to death. Dur-

ing the punishment phase of the trial, the three special issues mandated by article 37.071 of the Texas Code of Criminal Procedure were submitted to the jury.[1] Additionally, and over the objection of the State, a fourth issue was submitted. By the issue the jury was queried as follows:

> Do you find from the evidence, after considering fully the Defendant's mitigating evidence, if any, that the death penalty is a reasoned moral response to the Defendant's background, his character, and to the crime of which he was convicted?

The jury answered the three special issues mandated by article 37.071 in the affirmative. The fourth special issue was answered in the negative. After receiving the answers to the issues, the trial court sentenced appellee to death.

Thereafter, appellee filed a motion for new trial, or in the alternative, to reform the judgment to provide for a life sentence. Based upon the jury's answer to the fourth special issue, the trial court granted that motion and reformed the death sentence to life imprisonment.

Initially, appellee had earlier filed a motion to dismiss the State's appeal on the ground that this court lacks jurisdiction. That motion was overruled without prejudice to reurging the matter upon submission of this appeal, and appellee now reurges that contention.

Courts of Appeals do not have appellate jurisdiction in criminal cases "in which the death penalty has been assessed." Tex. Code Crim.Proc.Ann. art. 4.03 (Vernon Supp.1991). It is also provided that "The appeal of all cases in which the death penalty has been assessed shall be to the Court of Criminal Appeals." Tex. Const. art. V § 5 (1981); Tex.Code Crim.Proc.Ann. art. 4.04 § 2 (Vernon Supp.1991). Thus, if this is a "case in which the death penalty has been assessed," this court is without jurisdiction.

The words "has been assessed" constitute a present perfect verb form. The present perfect tense of a verb is formed with the helping verb "has" or "have." H. Ramsey Fowler, The Little, Brown Handbook, 187 (1986). The present perfect verb tense indicates action occurring in the past and continuing to the present. Webster's Secretarial Handbook 282 (2d ed., 1983). The past perfect tense is formed by use of the helping verb "had." H. Ramsey Fowler, The Little, Brown Handbook, 187 (1986). The past perfect tense indicates action completed at a past time or before the immediate past. Webster's Secretarial Handbook 282 (2d ed., 1983).

The phrase "cases in which the death penalty has been assessed" contains the present perfect verb tense. That being so, the cases "in which the death penalty has been assessed," within the purview of the above authorities, are cases in which the assessment occurred in the past and continues to the present. In the present case, although the judgment at one time did call for the death penalty, it was reformed and does not do so now.

■ The language of the constitution and statutes is presumed to have been selected with care. *Gallagher v. State*, 690 S.W.2d 587, 592 (Tex.Crim.App.1985); *see Polk v. State*, 676 S.W.2d 408, 410 (Tex. Crim.App.1984). We must presume the verb tense used in article V § 5 of the Texas Constitution and articles 4.03 and 4.04 of the Texas Code of Criminal Procedure was selected with care. Accordingly, the sentence before us is not one "in which the death penalty has been assessed" and over which the Court of Criminal Appeals has sole appellate jurisdiction. Appellee's motion to dismiss is overruled and we will proceed to consider the State's appeal.

In a single point, the State contends that the trial court erred in reforming appellee's sentence based on the jury's answer to the

---

1. By amendment effective September 1, 1991, article 37.071 now provides that different issues are submitted to the jury. However, by express provision of the law, that amendment did not become effective until September 1, 1991, and applies only to an offense committed after that date. Act of 1991, 72nd Leg., ch. 838, § 5(a). Since the offense in question was allegedly committed on or about September 22, 1989, that amendment is not applicable to the disposition of this case.

fourth special issue because the issue was not authorized by Texas law. In response, appellee asserts that the submission of the fourth issue is supported by *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

In the *Penry* case, the U.S. Supreme Court noted that a defendant might introduce mitigating evidence about his background, character or the circumstances of the crime that was not relevant to the special verdict questions of art. 37.071, or that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions. *Id.* 492 U.S. at 321, 109 S.Ct. at 2948. The Court stated that in the absence of instructions informing the jury that it could consider and give effect to such mitigating evidence, a jury is not provided with "a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision." *Id.* 492 U.S. at 328, 109 S.Ct. at 2951.

In support of his response to the State's point of error, appellee argues that the *Penry* requirement of a "vehicle" to allow a jury to express its reasoned moral response to proper mitigating evidence is not limited to an instruction. He posits that a special issue may also provide such a "vehicle."

In considering the effect of the *Penry* decision, and of *Penry*-type mitigating evidence, our Court of Criminal Appeals in *Gribble v. State,* 808 S.W.2d 65, 76 (Tex. Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991), cited *Penry* and referred to its requirement of a "functionally equivalent instructive device" to allow the jury to properly consider, and give effect to, the *Penry*-type of mitigating evidence. Likewise, in Judge Benevides' concurring opinion in *Richardson v. State,* No. 68,934, slip op. at 3 1991 WL 99949 (Tex.Crim.App. June 12, 1991), in which the Court addressed a *Penry*-type situation, referred to the need for a jury instruction "or its functional equivalent."

**2.** All future references to article numbers are to those articles of the Texas Code of Criminal

It is, of course, appellee's contention that the fourth special issue was functionally equivalent to a jury instruction and as such was permissible.

 While it is true that a functional equivalent to an instruction might satisfy the Federal *Penry* requirement, under the relevant Texas statute, a special issue may not serve in that capacity. Texas Code Crim.Proc.Ann. art. 37.07 § 1(a) (Vernon 1981) [2] provides, "The verdict in every criminal action must be general." The three special issues mandated by art. 37.071 are an exception to the statutory prohibition of special issues. *Harris v. State,* 790 S.W.2d 568, 579 (Tex.Crim.App.1989); *Stewart v. State,* 686 S.W.2d 118, 124 (Tex.Crim.App. 1984), *cert. denied,* 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985).

While we cannot say that a special issue would never be constitutionally necessary despite the statutory prohibition of art. 37.07 § 1(a), that is not the situation in this case. An instruction informing the jury that it could consider and give effect to *Penry*-type mitigating evidence would provide the jury with the mandated vehicle to allow the jury to express "its reasoned moral response" to such mitigating evidence. *Penry v. Lynaugh,* 492 U.S. at 328, 109 S.Ct. at 2952. Because a proper instruction serves the purposes delineated in *Penry,* a special issue is not constitutionally necessary, and thus, is not an exception to the statutory prohibition of art. 37.07.

 Appellee also contends that the State has lost its right to raise purported error in the submission of the fourth special issue since the State (1) failed to object and (2) acquiesced in its submission. The State has filed a supplemental statement of facts which clearly shows that the State objected to the submission of the fourth special issue. That being so, appellee's first contention is without merit.

Appellee contends that by its conduct the State acquiesced in the submission of the fourth issue and has, therefore, lost its right to complain of that submission. The

Procedure, unless specifically stated otherwise.

thrust of this assertion is that the State participated in the discussion of the wording of the issue. Indeed, appellee contends that the final wording of the issue was the result of the State's efforts in that discussion.

In support of his contention, appellee relies upon the decisions in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Wilson v. State*, 692 S.W.2d 661 (Tex.Crim.App.1984); and *State v. Lee*, 818 S.W.2d 778 (Tex.Crim.App. 1991). However, those cases are distinguishable.

In the *Steagald* case, the government raised for the first time on appeal before the Supreme Court the argument that Steagald lacked an expectation of privacy in the house sufficient to prevail on a Fourth Amendment claim. The Court concluded that the government through its assertions, concessions and acquiescence, lost its right to challenge Steagald's assertion that he possessed a legitimate expectation of privacy in the searched home. *Id.*

The Court's holding was based upon the government's actions in (1) acquiescing in statements by the lower courts characterizing the search as being one of Steagald's residence, (2) arguing during trial and appeal that petitioner's connection with the searched home was sufficient to establish his constructive possession of the cocaine found in a suitcase in the closet of the house, (3) failing to file a cross-petition for certiorari suggesting, as later requested before the Supreme Court, remand for factual determination of the matter, but rather, arguing that further review was unnecessary, and (4) expressly representing in its opposition to certiorari that the searched home was petitioner's residence. *Id.*

In *Lee*, appellant had been charged with the offense of murder and was found guilty of the lesser-included offense of voluntary manslaughter. 818 S.W.2d 778 (Tex.Crim.App.1991). The Court held Lee could not complain on appeal that the evidence failed to establish the elements of voluntary manslaughter. The basis of the Court's holding was that Lee had invoked the benefit of the lesser-included offense

charge at trial by not objecting to its submission to the jury and indeed, requesting its submission to the jury. *Id.*

In *Wilson*, the State asserted for the first time on appeal that Wilson did not have standing to challenge the search there in question. 692 S.W.2d at 661. In that case, the Court held there was no evidence in the record that affirmatively showed Wilson lacked such standing and further, the State had failed to timely raise the question of standing in the trial court. Thus, the State was prohibited from raising the question on appeal. *Id.*

In the *Wilson* case, the Court stated: The State should not be allowed to challenge standing for the first time on appeal if that challenge is inconsistent with its position in the court below. The reason is that to allow such a procedure would deny the defendant the opportunity to present evidence of standing since the defendant would have been led, by the State's position below, to believe that the State was not challenging his standing or had acquiesced to his standing (appellant in his brief at bar refers to such a procedure as "sandbagging").

*Id.* at 663.

Unlike the cases relied upon by appellee in the case at bar, the State never engaged in such conduct constituting acquiescence and, at the time of the completion charge, timely objected to the submission of the issue. The mere fact, as is commonly done in this state, that the State may have participated in the discussion and preparation of the issue to some extent, under this record, was not sufficient to mislead the trial court or appellee into believing it did not oppose the submission of the issue.

Having made the decision that the trial court erred in the submission of the fourth issue, it now becomes our duty to decide the proper disposition of this appeal. In *Pritchard v. State*, 117 Tex.Crim. 106, 35 S.W.2d 717 (1931), a plea for a suspended sentence had not been filed and no such issue had been submitted to the jury. Despite this, the jury returned a verdict sentencing the defendant to two years confinement and recommending a suspended sen-

tence. That verdict was received by the trial court. However, that court ignored the portion of the verdict recommending a suspended sentence and entered judgment fixing Pritchard's punishment at two years' confinement in the penitentiary. *Id.* at 717.

The Court of Criminal Appeals held that the trial court erred in entering an unauthorized judgment upon a verdict which the court should not have received and that action made it necessary to reverse and remand the case. *Id.* at 718. In doing so, the Court cited with approval a portion of the dissent in *Bessett v. State*, 78 Tex.Crim. 110, 180 S.W. 249 (1915), which stated:

> If it be held that the defendant could not get the benefit of the suspended sentence without his sworn application, then the jury returned a verdict which they were not authorized to do, and the court did not have any authority to receive it. An illegal verdict is a paradox. If illegal, it is not to be received or enforced. If he did not like the verdict and thought it was illegal, he should have sent the jury back and required them to find a proper verdict.... If the verdict is illegal, the court cannot legalize it by receiving it.

*Id.* 180 S.W. at 250–51.

In *King v. State*, 135 Tex.Crim. 71, 117 S.W.2d 800 (1938), the trial court erroneously instructed the jury if they found King guilty they might also specify the length of time, up to two years, he was prohibited from driving a motor vehicle on state highways. The law had been changed at that time to provide for an automatic driver's license suspension of six months for a first-time offender such as King. The jury returned a verdict of guilty and fixed the punishment at one year's confinement in the penitentiary and a driver's license revocation of two years.

In an effort to correct its error, the trial court followed the verdict as far as assessing the year's confinement in the penitentiary but ignored the portion of the verdict calling for a two-year driver's license suspension and rather, revoked the license for six months. The appellate court, commenting that a trial court cannot accept a jury verdict, discharge the jury and then decline to follow the verdict in material part, and held that the trial court's action required a reversal and remand of the case. In doing so, the Court made the following observation, significant to the question before us:

> In the present case the jury believed from the instruction they had received that they could suspend appellant's driving license for two years. If they had not so believed a different verdict entirely might have been reached. It is not a case where this court can reform a judgment.

*Id.* at 801.

The basic principle that a trial court may not accept an illegal verdict has been repeatedly applied by the Court of Criminal Appeals. *Garrett v. State*, 159 Tex.Crim. 203, 262 S.W.2d 414 (1953); *McCoy v. State*, 136 Tex.Crim. 473, 126 S.W.2d 487 (1939); *Chambless v. State*, 125 Tex.Crim. 188, 67 S.W.2d 309 (1934).

Parenthetically, we note that Tex.Code Crim.Proc.Ann. art. 37.10(b) (Vernon Supp. 1992) provides that if the jury assesses both punishment authorized by the law and punishment not authorized by the law, the court shall reform the verdict to show the punishment authorized by law and to omit the unauthorized punishment. However, in a capital case such as this one, the jury does not assess the punishment but it is assessed by the court based upon the jury's answers to special issues submitted.

In this case, the jury returned a verdict, which in part determined that after full consideration of the defendant's mitigating evidence, the death penalty was not a reasoned moral response to the defendant's background, his character, and to the crime of which he was convicted. As we have earlier noted, this fourth issue was not authorized under the applicable Texas law.

■ An illegal verdict is not to be received or enforced if it is illegal, and the court cannot legalize it by receiving it. *Pritchard v. State*, 117 Tex.Crim. 106, 35 S.W.2d 717 (1931). Because the trial jury here returned a verdict which they were not authorized to return, the trial court had no authority to receive it.

■ It has long been established that jury verdicts must be certain and their meaning and construction must not be left in doubt or speculation. *Batten v. State,* 549 S.W.2d 718, 722 n. 7 (Tex.Crim.App. 1977); *Allen v. State,* 138 Tex.Crim. 303, 136 S.W.2d 232, 233 (1940). This is especially true in capital cases. In the words of the Court in *Eads v. State,* 598 S.W.2d 304, 307 (Tex.Crim.App.1980), "In view of the extreme penalties involved, it is most important that a verdict in a capital murder case be certain and its meaning and construction must not be left in doubt or to speculation." Because we cannot speculate as to the effect the submission of the fourth issue may have had upon the jury's answers to the preceding three issues, the jury's verdict in this case is not sufficiently certain.

■ Previously, reversible error at the punishment hearing before the jury left the appellate court without authority to direct a new trial or penalty hearing before a different jury on the issue of punishment alone. *See Eads v. State,* 598 S.W.2d at 308; *Bullard v. State,* 548 S.W.2d 13, 18 (Tex.Crim.App.1977); *Brumfield v. State,* 445 S.W.2d 732, 740 (Tex.Crim.App.1969). This was so because the verdict of the jury is not complete until a verdict upon both guilt and punishment has been returned. Tex.Code Crim.Proc.Ann. art. 37.07 § 3(c); *Bullard v. State, supra.*

However, by amendment effective September 1, 1991, art. 44.29 currently provides that if a Court of Appeals or the Court of Criminal Appeals awards a new trial only on the basis of an error or errors made in the punishment stage of the trial, then the trial court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage.

The amendment authorizes commencement, in certain circumstances, of a new punishment hearing for a defendant convicted of capital murder. However, that amendment applies only to an offense committed on or after September 1, 1991. Acts of 1991, 72nd Leg., ch. 838 § 5(a). Since the present offense was committed prior to that effective date, the 1991 amendment is not applicable to this cause.

Prior to the 1991 amendment, art. 44.29(c) specifically stated, "This section does not apply to convictions under Section 19.03 [capital murder] of the Penal Code. In such cases, the cause shall stand as it would have stood in case the new trial had been granted by the court below." Therefore, in this capital murder case, arising prior to September 1, 1991, the error in the punishment hearing mandates that this court remand this cause for an entire new trial.

Our disposition of this matter obviates the need to address the remaining assertions of appellant and appellee. As a proper verdict at the punishment stage of this trial was not received, we have no alternative but to reverse the judgment of the trial court and remand the cause for a complete new trial.

## ON MOTIONS FOR REHEARING

Both parties have filed motions for rehearing in this proceeding. We remain convinced that our original disposition of the case was correct. Accordingly, we overrule both motions.

However, in doing so, we must point out that nothing in our original opinion should be construed as holding that the evidence which appellee contended entitled him to the fourth special issue or an instruction of like nature, met the criteria for such an instruction set out in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In the disposition which we made of the case, consideration of that question was not necessary. Accordingly, nothing in our original opinion should be interpreted as expressing an opinion on that issue.